**2018 UT App 226**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DANNY ROBERT KARREN,
Appellant.

Opinion
No. 20150020-CA
Filed December 13, 2018

Fifth District Court, St. George Department
The Honorable G. Michael Westfall
No. 131501806

Nicolas D. Turner, Attorney for Appellant

Sean D. Reyes and Nathan D. Anderson, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1    Danny Robert Karren appeals his convictions for possession or use of methamphetamine, possession or use of marijuana, and possession of drug paraphernalia. Karren argues that the district court erred by denying his request for an innocent possession jury instruction. Relying on *State v. Miller*, 2008 UT 61, 193 P.3d 92, Karren contends that he was entitled to an instruction on innocent possession because he was charged with a possession crime. Because Karren's argument misinterprets the holding in *Miller* and because the evidence in the record does not support an innocent possession instruction, we affirm the district court's denial of his request.

¶2 Karren also contends that his trial counsel provided ineffective assistance by failing to timely file certain pre-trial motions. Without addressing whether trial counsel's failure to timely file motions constituted deficient performance, we hold that Karren has failed to carry his burden of showing prejudice.

BACKGROUND[1]

¶3 After allegedly lighting a neighbor's car on fire, Karren's roommate and his girlfriend returned to the apartment they shared with Karren. There the two gathered "anything and everything they could," spoke briefly with Karren, and fled the apartment, leaving Karren behind. Sometime early the next morning, Karren smoked methamphetamine. Around the same time, Karren's roommate contacted Karren to let him know that the police might come to their apartment and that he left some things he needed Karren to bring to him. Karren agreed to deliver to a local motel a glass marijuana pipe, which belonged to the roommate's girlfriend, and a black backpack he retrieved from the roommate's bedroom. Karren placed the glass pipe in the backpack and drove to the motel in his van. When he arrived, Karren moved the backpack to the backseat of the van and fell asleep.

¶4 Shortly thereafter, a police officer responding to a call from a motel employee found Karren asleep in his vehicle. While he was standing outside of the vehicle looking in at Karren, the officer observed a large metal spoon with white residue lying on the passenger seat. Based on his training and experience, the officer recognized that the white residue was methamphetamine and that the spoon had been used to heat methamphetamine.

---

1. We recite the facts in the light most favorable to the jury's verdict, presenting conflicting evidence only as necessary to understand the issues on appeal. *See State v. Bond*, 2015 UT 88, ¶ 3 n.2, 361 P.3d 104.

¶5      The officer woke Karren and asked him to get out of the van. After exiting the vehicle, Karren provided the officer with his name and date of birth and the officer ran Karren's name through a government database and discovered that Karren had several warrants for his arrest. The officer read Karren his *Miranda*[2] rights, placed him under arrest, and questioned him about the white residue on the spoon. Karren replied that it was "meth." The officer also questioned Karren about when he last used "illegal drugs," to which Karren replied that it had been "approximately four hours before [their] encounter." Karren admitted he had also injected methamphetamine into his arm and the residue on the spoon was from heating the methamphetamine for injection.

¶6      Next, the officer asked Karren if there were any other drugs or drug paraphernalia in the vehicle. Karren answered affirmatively, directing the arresting officer to the black backpack in the backseat of the van that Karren admitted contained "a meth pipe, some syringes, a baggie of meth, and a marijuana pipe." When the officer asked if the items belonged to Karren, he answered, "Well, they're in my vehicle, aren't they?" In response to the arresting officer's questions, Karren also explained "that a crime happened earlier involving his roommate and that he thought the cops were going to come into his house, and so he loaded up some belongings inside his house, drove to the motel, and . . . fell asleep." Then Karren disclosed that the drugs in the backpack actually belonged to his roommate.

¶7      After questioning Karren outside the vehicle, the officer searched the vehicle and recovered the spoon with white residue

---

2. Pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), every individual "in custody or otherwise deprived of his freedom of action in any significant way" must be advised of his rights against self-incrimination under the Fifth Amendment to the United States Constitution. *Id.* at 445, 478–79.

from the passenger seat, a digital scale from the floor between the front seats, and the black backpack from behind the passenger seat. He searched the inside the backpack and discovered a second spoon with white residue on it, a glass methamphetamine pipe with white residue, a small plastic bag containing syringe caps and a crystal substance "consistent with that of methamphetamine," and a glass pipe containing "a green leafy substance that was consistent with that of marijuana." The green leafy substance later tested positive for marijuana and the crystal substance and white residue later tested positive for methamphetamine.

¶8 Based on Karren's statements to the officer and the drugs and paraphernalia discovered in his van, the State charged Karren with possession or use of methamphetamine, *see* Utah Code Ann. §§ 58-37-8(2)(a)(i), 58-37-4 (LexisNexis Supp. 2018); possession or use of marijuana, *see id.*; and possession of drug paraphernalia, *see id.* § 58-37a-5(1).

¶9 Karren's trial counsel filed several pre-trial motions as the case progressed, including a motion for discovery, a motion to compel discovery, two motions for defense resources, a motion for an entrapment hearing, and a motion to continue Karren's trial. Two days before trial, trial counsel filed a second motion to continue, which he orally renewed on the first morning of trial. In argument on that motion, counsel stated he was renewing the motion to continue to "pursue at least three [other] motions."

¶10 First, trial counsel requested a continuance to prepare a request for a jury instruction about missing or contaminated evidence, arguing that testimony from a prior hearing revealed that a police officer took photographs of the items inside of Karren's van. Because those photographs had not been produced, Karren requested a missing evidence jury instruction.

¶11 Karren's trial counsel then made a second motion, arguing that some of Karren's incriminating statements should be suppressed because the arresting officer conducted an

"unwarranted custodial interrogation." Counsel stated that he believed that Karren was not given his *Miranda* rights before his driver license was taken and he was questioned.

¶12    Finally, trial counsel moved to dismiss, alleging "selective prosecution or vindictive prosecution." In making this argument, counsel conceded that he had not "really found the basis under the law for selective prosecution," but he nevertheless felt he needed to make a record of the motion. He also explained that Karren felt that "other defendants charged with similar . . . distribution cases, have been released to treatment, [and] seem to have better outcomes than what has been offered to him."

¶13    Ultimately, the district court judge denied the motion to continue, stating that, based on the evidence before the court, it appeared that "the motions that [defense counsel] identified . . . would be untimely and [it is unclear] how they would make any difference, even if the motions were to have been filed [in a timely fashion]."

¶14    At trial, the arresting officer testified that the black backpack and photographs he took of the drugs and paraphernalia he confiscated from Karren's van were missing from evidence. In addition, another officer testified that he processed the evidence but did not recall processing a black backpack. Based on this testimony, the district court granted Karren's request that the jury be instructed as to missing evidence. The jury was instructed that "the failure to preserve evidence by a party may give rise to an inference unfavorable to that party."

¶15    Near the end of trial, Karren's trial counsel also renewed the motion to suppress. Karren testified that he was not given *Miranda* warnings before the officer questioned him about the residue on the metal spoon found in the passenger seat of his van. Based on this testimony, the district court agreed to entertain the renewed motion to suppress outside the jury's

presence. The State recalled the arresting officer, who testified that he gave Karren his *Miranda* warnings before questioning him. After argument on the motion, the district court ruled that it "believe[d] the officer's testimony with regard to what happened" and it "just doesn't make sense . . . [that] it would happen the way that [Karren] describes it." Accordingly, the court denied the motion to suppress.

¶16 After closing arguments, trial counsel also requested an innocent possession jury instruction, which the court denied. The jury found Karren guilty of all charges.

¶17 Karren appeals.

ISSUES AND STANDARDS OF REVIEW

¶18 Karren raises two issues on appeal.[3] First, Karren contends that the district court erred in denying his request to instruct the jury as to innocent possession. "We review a district court's refusal to give a jury instruction for abuse of discretion." *Miller v. Utah Dep't of Transp.*, 2012 UT 54, ¶ 13, 285 P.3d 1208. "Abuse of discretion occurs only if it can be said that no reasonable person would take the view adopted by the district court." *State v. Sanchez*, 2017 UT App 229, ¶ 2, 409 P.3d 156 (per curiam) (quotation simplified).

¶19 Second, Karren contends that his trial counsel provided ineffective assistance by failing to timely raise four pre-trial motions. Karren failed to preserve this claim below but we

_____

3. In his initial notice of appeal, Karren asserted three additional reasons that he believes his trial counsel provided ineffective assistance. Because Karren's appellate counsel was admittedly "unable to determine what [Karren] was referring to" in regards to these arguments and has otherwise failed to address them in the appellant's brief, we decline to reach them.

recognize an exception to the preservation rule for claims of ineffective assistance of counsel. *See State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443 (acknowledging an ineffective assistance of counsel exception to the preservation rule). "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Robertson*, 2018 UT App 91, ¶ 21, 427 P.3d 361 (quotation simplified).

ANALYSIS

I. Innocent Possession Instruction

¶20 Karren first contends that he was entitled to an innocent possession jury instruction. In general, "a defendant is entitled to have his legal theory of the case placed before the jury if it would not be superfluous to do so because of an absence of any evidence to support the theory." *State v. Piansiaksone*, 954 P.2d 861, 871 (Utah 1998) (quotation simplified). A defendant is not entitled to present his theory to the jury if there is no "basis in the evidence to support" it. *State v. Kennedy*, 2015 UT App 152, ¶ 32, 354 P.3d 775. "The issue of whether the record evidence, viewed in its totality, supports the defendant's theory of the case is primarily a factual question," that is "entitled to more deference than any other kind of determination." *State v. Berriel*, 2013 UT 19, ¶ 9, 299 P.3d 1133.

¶21 In *State v. Miller*, 2008 UT 61, 193 P.3d 92, the Utah Supreme Court held that the possession of a controlled substance statute, Utah Code section 58-37-8(2)(a)(i), "implicitly includes the defense of innocent possession." *Id.* ¶ 21. The defense applies when "(1) the controlled substance was attained innocently and held with no illicit or illegal purpose, and (2) the possession of the controlled substance was transitory; that is, that the defendant took adequate measures to rid himself of

possession of the controlled substance as promptly as reasonably possible." *Id.* ¶ 22.

¶22　　In *Miller*, the court identified one factual scenario in which a defendant would be entitled to an innocent possession instruction. The defendant in that case was charged with possessing prescription oxycodone and hydrocodone pills. *Id.* ¶ 7. Both drugs were discovered in a pill bottle, which the defendant had placed in his pants pocket, with a prescription label bearing another person's name. *Id.* ¶¶ 6–7. At trial, the defendant presented evidence that he discovered the pill bottle when some guests left his house and that he put it in his pocket to keep it out of reach of his children until he could return it to the person to whom it belonged. *Id.* ¶ 6. Our supreme court held that the district court should have granted the defendant's request for an innocent possession jury instruction because "the term 'possess,' as it is used in section 58-37-8(2)(a)(i), excludes transitory possession of a controlled substance for the purpose of returning it to its lawful owner." *Id.* ¶¶ 21, 24. The court's holding presupposes a situation where there is a lawful owner to whom the drugs can be returned—in that case, the individual whose name was on the prescription label.

¶23　　Unlike in *Miller*, there was no lawful owner to whom Karren could return the marijuana and methamphetamine, two drugs that could not be prescribed or legally possessed in Utah.[4] Although Karren testified he was in possession of the drugs because he agreed to bring them to his roommate at the motel, no evidence in the record suggests that Karren's roommate could lawfully possess such contraband. There was no evidentiary basis on which a jury could find that Karren possessed the

---

4. The Utah legislature recently passed H.B. 3001, the Utah Medical Cannabis Act, which would legalize the possession of marijuana under limited circumstances. If signed into law, the Act would become effective on July 1, 2019.

controlled substances "with no illicit or illegal purpose" where his professed purpose was to deliver the drugs to an illegal user.

¶24 We do not read *Miller* to suggest that "temporary possession for the purpose of returning a controlled substance to its lawful owner" is the only circumstance in which the innocent possession defense would apply. *Miller*, 2008 UT 61, ¶ 19. But Karren has identified no evidence that would support an alternative theory of innocent possession, such as intent to dispose of the drugs to prevent harm to others or to turn them over to the proper authorities. Instead, Karren claims only that he was returning the drugs to his roommate. Under such circumstances, a defendant must point to some evidence to suggest he was returning the drugs to a person who could *legally* possess them. Because there is no evidence to support such a theory in this case, the district court did not err in denying Karren's request for an innocent possession jury instruction.

## II. Ineffective Assistance of Counsel

¶25 Karren's second claim is that his trial counsel provided ineffective assistance by making untimely pre-trial motions. Specifically, Karren argues that his trial counsel failed to timely move for a continuance so that he would have an opportunity to file three other motions: a motion for a jury instruction relating to "missing photographs and fingerprint contamination," a motion to suppress "based upon unwarranted custodial interrogation," and a motion to dismiss "based upon selective or vindictive prosecution."[5] In order to succeed on this claim,

_____

5. It is unclear from Karren's briefing on appeal whether he is arguing that his trial counsel provided ineffective assistance by failing to timely move to continue trial or if he is arguing that his trial counsel provided ineffective assistance by failing to timely make the motions that counsel claimed justified his motion to continue. For clarity, we address each of the four motions separately.

Karren must show "both that his trial counsel performed deficiently . . . i.e., 'that counsel's representation fell below an objective standard of reasonableness,'" and that, had counsel performed sufficiently, "there is a 'reasonable probability' that the outcome of the trial would have been more favorable to him." *State v. Whitbeck*, 2018 UT App 88, ¶ 35, 427 P.3d 381 (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation simplified).

¶26    Although Karren bears the burden of showing both deficient performance and prejudice, "in the event it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we will do so without analyzing whether counsel's performance was professionally unreasonable." *State v. Lee*, 2014 UT App 4, ¶ 13, 318 P.3d 1164 (quotation simplified). Here, Karren's claim that his trial counsel provided ineffective assistance in failing to file timely pre-trial motions can be disposed of for lack of prejudice because each of the motions was either futile or entertained on the merits by the district court. We address each motion in turn.

A.    Motion for Jury Instruction Related to Missing Evidence

¶27    First, Karren contends that his trial counsel provided ineffective assistance of counsel by making an untimely motion for "some kind of instruction to the jury that the lack of [fingerprint and photograph] evidence prejudices [Karren]." In making this argument, Karren neglects to acknowledge that the district court did instruct the jury that "the failure to preserve evidence by a party may give rise to an inference unfavorable to that party." Although the court initially denied as untimely trial counsel's motion for a missing evidence instruction, Karren cannot show he was prejudiced by counsel's failure to timely make the motion where the court eventually granted the relief requested. Because the jury was instructed regarding the missing evidence, Karren cannot show that but for counsel's failure to timely make the motion for a jury instruction, "there is a

reasonable probability that the verdict would have been different." *See State v. Martinez-Castellanos*, 2018 UT 46, ¶ 51, 428 P.3d 1038.

B. Motion to Suppress

¶28 Second, Karren argues that his trial counsel provided ineffective assistance by failing to timely move to suppress the statements Karren made to the arresting officer on the basis that they were the result of "unwarranted custodial interrogation."

¶29 Although the district court initially declined to hear the untimely motion to suppress, Karren's counsel renewed the motion after Karren testified at trial that the officer did not provide *Miranda* warnings until after he had taken Karren's driver license and began questioning. Outside the presence of the jury, the district court heard further testimony on the issue from both the arresting officer and Karren. After hearing additional testimony on the issue, the district court denied Karren's motion to suppress, stating that it "believe[d] the [arresting] officer's testimony with regard to what happened."

¶30 Given that the court ultimately considered the motion to suppress on the merits, trial counsel's failure to raise the motion in a timely fashion did not prejudice Karren. Furthermore, Karren does not challenge the court's denial of the motion to suppress nor does he argue that the result would have been different if his motion had been entertained before trial. As a result, Karren has failed to show that he was prejudiced by counsel's failure to timely file the motion in the first instance.

C. Motion to Dismiss

¶31 Third, Karren argues that his trial counsel was ineffective in failing to timely make a motion to dismiss based on Karren's concerns "that this case is an example of selective prosecution or vindictive prosecution." In the context of ineffective assistance of counsel claims, "the failure of counsel to make motions or

objections which would be futile if raised does not constitute ineffective assistance." *State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52 (quotation simplified).

¶32   In order to show selective or discriminatory prosecution, a defendant must demonstrate that the State's decision to prosecute was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification" in violation of the Fourteenth Amendment Equal Protection Clause. *State v. Geer*, 765 P.2d 1, 3 (Utah Ct. App. 1988) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). To make this showing, "the defendant must demonstrate that a prosecutorial policy result[ed] in a discriminatory effect, based on an unlawful classification." *Id.* Generally, "as long as the prosecutor has probable cause to believe that an offense has been committed, the decision regarding whether to prosecute . . . rests entirely in the prosecutor's discretion." *Id.* (quotation simplified).

¶33   Karren has not shown that the State's prosecution violated the Equal Protection Clause or that the State deliberately abused its discretion in deciding to prosecute him. Indeed, defense counsel admitted in argument on the motion to dismiss that he "just need[ed] to make a record." Although he had researched Karren's selective prosecution claims, he was not "sure [he had] seen the facts necessary to support such a motion." Karren's allegations of selective prosecution seem to be based entirely on his concern that "other defendants charged with similar . . . distribution cases, have been released to treatment, [and] seem to have better outcomes than what has been offered to him." Karren cannot show he was prejudiced by his trial counsel's failure to timely file the motion to dismiss where nothing in the record suggests he would have prevailed on such an unsupported claim.

D.     Motion to Continue Trial

¶34   Finally, Karren argues that his trial counsel provided ineffective assistance by failing to timely move to continue trial.

Trial counsel moved for a continuance the morning of the first day of trial to "pursue at least three motions"—the motion for a jury instruction about missing evidence, the motion to suppress for failure to give *Miranda* warnings, and the motion to dismiss because of selective prosecution. Apart from those three motions, defense counsel made no other argument that the district court should grant Karren's motion to continue. We have already addressed those motions and determined they were, respectively, granted, rejected by the district court on the merits, or otherwise futile. Because of this, Karren cannot show that but for counsel's failure to timely make the motion to continue he would have received a better result at trial.

¶35 Karren has not shown that he was prejudiced by his trial counsel's failure to timely file pre-trial motions. Accordingly, he has failed to show that his trial counsel provided ineffective assistance of counsel.

CONCLUSION

¶36 We affirm the district court's denial of Karren's request to instruct the jury as to innocent possession because the evidence in the record does not support Karren's argument that he innocently possessed methamphetamine and marijuana. In addition, we hold that Karren has not shown that his trial counsel provided ineffective assistance of counsel because he has failed to demonstrate he was prejudiced by trial counsel's failure to timely file pre-trial motions. Accordingly, we affirm Karren's convictions.

———————