**2024 UT App 193**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
EVIN CHRISTOPHER DEVAN,
Appellant.

Opinion
No. 20221127-CA
Filed December 27, 2024

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 201403341

Emily Adams and Rachel Phillips Ainscough,
Attorneys for Appellant

Sean D. Reyes and Daniel L. Day,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1 A jury convicted Evin Devan of aggravated assault based on an incident in which Devan repeatedly punched and kicked an acquaintance outside of a bar. On appeal, Devan raises several claims relating to the jury instructions. For the reasons set forth below, we affirm his conviction.

BACKGROUND[1]

*The Altercation*

¶2 In the fall of 2020, Devan lived with his girlfriend (Girlfriend) at her parents' house. Girlfriend's parents hosted Thanksgiving dinner that year, and several of their family members and friends attended, including Steve, who knew both Devan and Girlfriend's parents.

¶3 Devan had recently started a business selling CBD gummies, and he had tried to sell CBD gummies to Steve on prior occasions. At one point that night, Steve gave Devan $50 in exchange for some gummies. Steve thought that he was purchasing "THC edibles" that would get him "high" and leave him feeling "stoned." But Steve apparently "misunderstood" what he was purchasing, and Devan gave him CBD gummies, which do not contain THC and do not produce a high.[2]

¶4 A few days later, Steve discovered that the gummies he had purchased contained CBD as opposed to THC. Steve texted Devan, "Hey [Evin], this is Steve. You sold me some cbd bullshit man. I'm gonna come over later [and] give you these gummies

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Suhail*, 2023 UT App 15, n.1, 525 P.3d 550 (quotation simplified), *cert. denied*, 531 P.3d 730 (Utah 2023).

2. As explained by the CDC, tetrahydrocannabinol (THC) is a "mind-altering substance" that can produce "psychoactive effects," while cannabidiol (CBD) is a "compound found in cannabis" that "is not impairing, meaning it does not cause a 'high.'" *About CBD*, U.S. Centers for Disease Control and Prevention, https://www.cdc.gov/cannabis/about/about-cbd.html [https://perma.cc/MQU7-LA4S].

back and you are gonna give me my money." Within a few minutes of receiving the text, Devan called Steve, and when Steve told Devan that he was currently at a local bar (the Bar), Devan said that he would come meet him there.

¶5      Devan arrived at the Bar and found Steve sitting inside with his girlfriend, his father, and several friends. Devan said, "I want to talk to you outside for a little bit." Steve agreed, and the two went outside.

¶6      When they got outside, Steve was smoking with one hand, and his other hand was in his pocket with his wallet. Devan began yelling at Steve, saying something "along the lines of, 'don't ever tell a man what to do, don't ever talk to me like that.'" Devan "just kept going and going" while Steve "wait[ed] for him to cool down." Steve eventually looked Devan in the eyes and said, "Well, if you're going to really get mad over $50, I'd say you were hardly a man."

¶7      An employee of the Bar happened to be outside smoking at the time and observed the interaction. The employee heard Devan say to Steve, "Someone needs to teach you some respect." At that point, Devan began punching Steve. Devan punched Steve "over and over," and after Steve had fallen to the ground, Devan "kicked [him] in the jaw." Devan eventually stopped his attack, at which point he got into his car and left. The Bar's surveillance camera captured the attack on video.

¶8      Steve was immediately in "a lot of pain," and as the adrenaline rush began subsiding, Steve noticed that his jaw was now "detached from [his] face." Steve went to the hospital, where he waited "for about 16 hours holding [his] jaw together" until he underwent surgery. After the surgery, Steve's jaw "was wired shut for about two months." Steve couldn't "eat anything solid" for "three to four months," and he lost "10 to 15 pounds" during that period. Steve was left with "permanent nerve damage" to his chin.

*The Charge and the State's Case at Trial*

¶9 The State charged Devan with one count of aggravated assault. In relevant part, the statute required the State to prove that Devan (1) committed an act "with unlawful force or violence" that (2) "cause[d] bodily injury" or "create[d] a substantial risk of bodily injury to" Steve and that Devan (3) used "force likely to produce death or serious bodily injury." Utah Code § 76-5-103(2)(a)(iii), (b)(iii).[3]

¶10 The case went to trial. There, the State presented testimony from Steve, the Bar employee who witnessed the attack, and two police officers who had assisted in the investigation. The court also admitted the video of the assault as an exhibit, and the video was played for the jury

*The Directed Verdict Motion*

¶11 After the State rested its case, Devan's attorney (Counsel) made a motion for a directed verdict. Counsel argued "that the State has not shown sufficient evidence that the jury can find beyond a reasonable doubt that Mr. Devan used force likely to cause or did cause serious bodily injury" and asked the court to amend the charge to a misdemeanor offense assault. The district court denied the motion.

*The Defense's Case*

¶12 In the defense's opening statement, Counsel asserted to the jury that Devan was not guilty of aggravated assault because he was acting in self-defense. Counsel then advanced this theory at trial in a number of ways.

---

3. The aggravated assault statute has been amended since Devan's trial, but because there were no substantive changes to the elements in question, we cite the current version for convenience.

¶13    First, Girlfriend testified that at the Thanksgiving dinner she and Devan were in the garage at one point and began speaking with Steve. She said that Steve asked Devan "how he was doing," to which Devan responded, "I'm dealing with some stuff, but it's all good." Girlfriend said that Steve then responded, "Well, do you want me to stab someone for you?" Girlfriend said that she was surprised by Steve's "jarring and aggressive response." Girlfriend said that Devan then asked Steve "if he'd ever stabbed anyone" before, that Steve responded affirmatively, and that Devan put his hand on Steve's shoulder and said, "That's not cool." In his own testimony, Devan corroborated Girlfriend's account, and he further said that he thought this interaction "was extremely alarming."

¶14    Second, while cross-examining Steve, Counsel elicited testimony that on the night of the altercation, the friends that Steve was with at the Bar were from a group that rides motorcycles together, wears leather jackets and patches, and refers to itself as the "UMF," which stood for, in Counsel's sanitized form, the "Ugly Mother Effers." During trial, Counsel characterized UMF as "a motorcycle gang, which has a notorious reputation of being violen[t]." Counsel also elicited testimony suggesting that the UMF members who were with Steve that night would have been identifiable based on their jackets.[4]

¶15    Third, Devan did not dispute that he had punched and kicked Steve. (Nor could he realistically do so, given that, as noted, the incident was captured on video.) But in his testimony, Devan offered a self-defense-oriented account of what occurred in the moments that led up to the violence, as well as what caused him to start punching Steve. Devan testified that when he and

---

4. In his testimony, Steve denied that UMF is a violent gang, instead claiming that it's a "club" or "men's social organization" whose members "ride motorcycles together" and host an annual "fundraiser for the Primary Children's Hospital."

Steve walked outside the Bar, Devan told him, "Hey Bro, I'm not here to disrespect you. I'm not here to yell at you. I'm not here to –none of that. I'm here to give you your money back, and we can leave this at peace." According to Devan, Steve responded, "Yeah, you are." Devan said that he then asked Steve, "What does that mean? Does that mean you're going to take it from me?", to which Steve responded, "Yes."

¶16 Devan also said that he noticed that Steve was wearing what looked to him to be "a stab-proof vest."[5] Devan said that he noticed that Steve had one hand in his pocket, and, according to Devan, he saw "a definitive outline of something in that pocket." Devan claimed that Steve "spit" and "blew smoke" in his face.[6] Devan then claimed that, in the moments before he hit Steve, Steve began "inching closer" to him. From all this, Devan said that he believed that Steve was "about to assault" him, so, acting on instinct, he said that he punched Steve in order to "[d]efend [him]self," and he said that he kept punching him out of "adrenaline" and fear that Steve would attack him with a weapon if he stopped. Devan also said that he was worried about "a bunch of UMF guys pouring out the door."

*The Relevant Jury Instructions*

¶17 Before trial, Counsel submitted proposed jury instructions, several of which centered on self-defense. One of the requested instructions (the Actual-Danger Instruction) read as follows:

> You are instructed that actual danger is not necessary to establish self-defense. If one is

---

5. In his testimony, Steve denied that he was wearing such a vest.

6. As noted, Steve was smoking when he exited the Bar, and the resultant attack was caught on video. In his closing argument, the prosecutor suggested that in the particular moment in question, Steve was simply "exhaling with the vapor."

confronted by the appearance of peril which arouses in his mind, as a reasonable person, an honest conviction that he is about to suffer death or serious bodily injury, or is about to be the victim of a forcible felony, and if a reasonable person in a like situation, seeing and knowing the same facts, would be justified in believing himself in danger, his right to self-defense is the same whether such danger is real or merely apparent.

Even if in light of after acquired information, or from the distance and perspective of the jury box, it should appear that there was no actual danger or there was only slight actual danger, that fact would not affect the right of self-defense if the appearances establishing that right existed.

¶18 During a break midway through trial (and outside the jury's presence), the district court told the parties that it had "spent quite a bit of time thinking about" the defense's proposed instructions and had decided not to give them. The court gave reasons for not giving each one. With respect to the Actual-Danger Instruction, the court said that, in its view, the proposed instruction was an "accurate statement of law." But the court said that it thought the "requirement of reasonable belief" was "adequately addresse[d]" by the "MUJI" instructions regarding self-defense that it intended to give,[7] and it further explained that the "direct and circumstantial evidence instruction" that it intended to give "also addresses this concern." The court thus explained that "between the self-defense instructions and the direct and circumstantial evidence instruction," it thought that the "actual versus apparent danger concern" was "cover[ed]." The court also said that it would allow Counsel to "argue essentially

---

7. The term "MUJI" refers to the Model Utah Jury Instructions. *See Meeks v. Peng*, 2024 UT 5, ¶ 36, 545 P.3d 226.

these points as appropriate," and it specifically said that "the defense can argue that actual danger is not necessary to establish a reasonable belief, only apparent danger."

¶19 At the close of evidence, the court read the final instructions to the jury. These included the following instruction on self-defense, which was taken directly from MUJI:

> You must decide whether the defense of Defense of Self or Other applies in this case. Under that defense, the defendant is justified in using force against another person when and to the extent that the defendant reasonably believes that force is necessary to defend himself or a third party, against another person's imminent use of unlawful force.
>
> The defendant is justified in using force intended or likely to cause death or serious bodily injury only if the defendant reasonably believes that:
>
> 1. Force is necessary to prevent death or serious bodily injury to the defendant or a third person as a result of another person's imminent use of unlawful force; or
>
> 2. To prevent the commission of a forcible felony, such as Robbery, the definition of which can be found under jury instruction 20.
>
> The defendant is not justified in using force if the defendant:
>
> 1. Initially provokes the use of force against another person with the intent to use force as an excuse to inflict bodily harm upon the assailant; or

2. Was the aggressor, unless the defendant withdraws from the encounter and effectively communicates to the other person the defendant's intent to do so and, notwithstanding, the other person continues or threatens to continue the use of unlawful force.

¶20 The court further instructed the jury that "reasonableness shall be determined from the viewpoint of a reasonable person under the then existing circumstances." It then listed several "factors" that the jury could consider in "determining imminence or reasonableness," including "the nature of the danger," "the immediacy of the danger," "the probability that the unlawful force would result in death or serious bodily injury," "the other's prior violent acts or violent propensities," "any patterns of abuse or violence in the parties' relationship," and "any other relevant factor." The court also instructed jurors that the State had the burden to "prove beyond a reasonable doubt that the defendant was not justified in using force," and it further instructed that a defendant generally has no "duty to retreat" unless "the defendant was the aggressor."

¶21 In the "direct and circumstantial evidence" instruction, the court instructed the jury, in part, that it could consider "evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn and is a deduction of fact that may logically and reasonably be drawn." And the court further instructed jurors to "make those just and reasonable inferences from circumstances proven which the guarded judgment" of a "reasonable person" would "ordinarily make under like circumstances."

*Closing Arguments and the Conviction*

¶22 In the State's closing argument, the prosecutor again played the video of the assault, after which he argued to jurors that it "prove[d] the assault, and it disprove[d] that [Devan] acted

in self-defense." The prosecutor further argued that self-defense did not apply because Devan was the aggressor and failed to withdraw. And the prosecutor explained why, in the State's view, Steve's injuries—his separated jaw and permanent nerve damage—constituted serious bodily injury.

¶23 In the defense's closing argument, Counsel argued that Devan was justified in using force to prevent a robbery by Steve. Counsel also suggested that Steve was the aggressor, not Devan. In various ways, Counsel either explicitly or implicitly argued that, for purposes of self-defense, the question turned on the reasonableness of Devan's belief that he was in danger at the time of the altercation and not on whether Devan faced an actual danger. These included:

- "If you know your assailant has a history of violence, that's a relevant factor. It doesn't have to be true, it's what that person's perception is, it's what he portrays himself. And [Steve] portrayed himself as a tough motorcycle gang guy who had no problem stabbing people and would stab people for others, if so desired."

- "In conjunction of everything that was going through his mind, [Devan] realized, I'm in danger here and I need to strike."

- "And there is nothing in the laws that say you must be struck first before you can defend yourself. . . . If you have reason to believe that [the] attack is going to come, you may strike first, because that act is in self-defense. And that's the law."

- "It doesn't matter that the actual threat didn't exist . . . . It was what was apparent. And that is why the laws of self-defense say what he reasonably believes."

¶24    After addressing the self-defense theory at some length, Counsel shifted gears at the end of his argument, suggesting to jurors that, "if for some reason the prosecution has convinced you that [Devan] wasn't acting in self-defense, then nevertheless he's not guilty as charged of aggravated assault because he did not use force likely to cause death or serious bodily injury." Counsel seemingly acknowledged the severity of Steve's injuries, but he then said that it "doesn't matter that that's what resulted." Instead, Counsel asserted that the issue was "what normally you would expect. Normally a fistfight, and nothing more, would not be what we are here for." For these reasons, Counsel asked jurors to "find [Devan] not guilty."

¶25    After deliberating, the jury found Devan guilty of aggravated assault.

## ISSUES AND STANDARDS OF REVIEW

¶26    On appeal, Devan first argues that the district court erred by not giving the proposed Actual-Danger Instruction. "We review a district court's refusal to give a jury instruction for abuse of discretion." *State v. Karren*, 2018 UT App 226, ¶ 18, 438 P.3d 18 (quotation simplified). "Abuse of discretion occurs only if it can be said that no reasonable person would take the view adopted by the district court." *Id.* (quotation simplified).

¶27    Devan also argues that Counsel provided ineffective assistance by not requesting three additional jury instructions—namely, instructions on the lesser included offense of assault, the definition of "aggressor," and the defense of habitation. "A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law." *State v. Florreich*, 2024 UT App 9, ¶ 25, 543 P.3d 795 (quotation simplified), *cert. denied*, 547 P.3d 828 (Utah 2024).

ANALYSIS

## I. Actual-Danger Instruction

¶28 Devan first argues that the district court abused its discretion when it declined to give the proposed Actual-Danger Instruction. We see no abuse of discretion in the court's decision.

¶29 "In general, a defendant is entitled to have his legal theory of the case placed before the jury if it would not be superfluous to do so because of an absence of any evidence to support the theory." *State v. Karren*, 2018 UT App 226, ¶ 20, 438 P.3d 18 (quotation simplified). But "a defendant is not entitled to present his theory to the jury if there is no basis in the evidence to support it." *Id.* (quotation simplified). Since this issue is "primarily a factual question," we afford deference to the district court's determination. *Id.* (quotation simplified).

¶30 That said, a district court does not necessarily abuse its discretion when it refuses to give *every* instruction requested by a party, even if a requested instruction arguably has some basis in the evidence. To the contrary, a "court does not err by refusing a proposed instruction if the point is properly covered in other instructions." *State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892 (quotation simplified). "So long as they correctly state the law, the precise wording and specificity of jury instructions" is "left to the sound discretion of the trial court." *Meeks v. Peng*, 2024 UT 5, ¶ 35, 545 P.3d 226 (quotation simplified). "When reviewing jury instructions, we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *State v. Kitzmiller*, 2021 UT App 87, ¶ 15, 493 P.3d 1159 (quotation simplified). And a court's "failure to give a requested jury instruction constitutes reversible error only if its omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." *State v. Van Oostendorp*, 2017 UT App 85, ¶ 41, 397 P.3d 877 (quotation simplified).

¶31    Here, Devan's requested Actual-Danger Instruction said, among other things, "that actual danger is not necessary to establish self-defense" and that a person's "right to self-defense is the same whether such danger is real or merely apparent." But the district court declined to give this instruction, reasoning that these issues were "adequately addresse[d]" by the "self-defense instructions and the direct and circumstantial evidence instruction" that it would later give to the jury.

¶32    In arguing that the district court should have given the instruction, Devan points to our supreme court's decision in *State v. Starks*, 627 P.2d 88 (Utah 1981). But while *Starks* noted that an instruction like this one was given to the jury in that case, *id.* at 91 n.2, the supreme court did not analyze the instruction at any length, much less hold that district courts are always required to give such an instruction on request. Regardless, even if it were true that a court could choose to give such an instruction, we see no abuse of discretion in the district court's conclusion here that both the governing law and even the concepts conveyed in this proposed instruction were adequately conveyed by other instructions that were given.

¶33    For purposes of self-defense, a person is justified in using force, in relevant part, if he or she "reasonably believe[d] that force or a threat of force [was] necessary to defend" himself or herself "against the imminent use of unlawful force." Utah Code § 76-2-402(2)(a). And a person is justified in using force "intended or likely to cause death or serious bodily injury only if" the person "reasonably believes that force is necessary to prevent death or serious bodily injury to the individual or another individual as a result of imminent use of unlawful force, or to prevent the commission of a forcible felony." *Id.* § 76-2-402(2)(b).[8] Thus, in a

---

8. Like the aggravated assault statute, the self-defense statute was amended after Devan's trial, but because the amendments do not

(continued…)

self-defense case, the "ultimate question before the trier of fact remains the reasonableness of a defendant's belief that force was necessary to defend against another's imminent use of unlawful force." *State v. Walker*, 2015 UT App 213, ¶ 10, 358 P.3d 1120.

¶34    The jury was correctly and adequately instructed on these concepts. As noted above, the district court instructed the jury that Devan was "justified in using force intended or likely to cause death or serious bodily injury" if he "reasonably believe[d] that: 1. Force [was] necessary to prevent death or serious bodily injury to the defendant . . . as a result of another person's imminent use of unlawful force; or 2. To prevent the commission of a forcible felony . . . ." The court further instructed the jury that "reasonableness shall be determined from the viewpoint of a reasonable person under the then existing circumstances." The court also gave jurors several "factors" that they could consider in "determining imminence or reasonableness," including "the other's prior violent acts or violent propensities," "any patterns of abuse or violence in the parties' relationship," and "any other relevant factor." And finally, in the "direct and circumstantial evidence" instruction, the court instructed jurors, in relevant part, that they should "make those just and reasonable inferences from circumstances proven which the guarded judgment of a reasonable [person] would ordinarily make under like circumstances."

¶35    In its brief, the State asserted that, taken as a whole, these instructions "included everything in Devan's proposed instruction other than the words 'actual' or 'apparent' danger," and Devan did not persuade us otherwise in his reply. But even without the words "actual" or "apparent," the jury was adequately advised of the relevant legal question—namely, that what mattered was the reasonableness of Devan's *belief* that it was

---

alter the provisions in question, we cite to the current version for convenience.

necessary for him to use force to prevent death or serious bodily injury. And by further instructing jurors that, in assessing the reasonableness of Devan's belief, they could consider past events and patterns, the court indicated that jurors could look outside the things that were happening at the exact moment that Devan used force, which seems to be the point of the proposed Actual-Danger Instruction.

¶36    In short, we agree with the State that the absence of these two words did not "mislead the jury" about the relevant legal standard, nor was the jury "insufficiently or erroneously advise[d] . . . on the law." *Van Oostendorp*, 2017 UT App 85, ¶ 41 (quotation simplified). Because "the instructions taken as a whole fairly instruct[ed] the jury on the law" of self-defense, *Kitzmiller*, 2021 UT App 87, ¶ 15 (quotation simplified), we see no abuse of discretion by the district court.[9]

---

9. Devan also briefly suggests that by not giving the Actual-Danger Instruction, the court prevented him from advancing his "theory of the case." But in assessing a similar claim, we've previously considered whether the district court allowed the party to make the relevant argument to the jury. *See, e.g.*, *Salt Lake City v. Smoot*, 921 P.2d 1003, 1011 (Utah Ct. App. 1996). As indicated, the district court here did just that, expressly allowing Counsel to "argue essentially these points as appropriate" and more specifically to "argue that actual danger is not necessary to establish a reasonable belief, only apparent danger." Counsel took advantage of this allowance, explicitly telling jurors, among others, that it "doesn't matter that the actual threat didn't exist . . . . It was what was apparent. And that is why the laws of self-defense say what he reasonably believes." We therefore see no basis for concluding that the court's ruling on the proposed instruction somehow prevented Devan from advancing his theory of the case.

II. Ineffective Assistance of Counsel

¶37   Devan next argues that he received ineffective assistance when Counsel did not request three additional instructions—namely, instructions on (A) the lesser included offense of assault, (B) the definition of "aggressor," and (C) the defense of habitation.

¶38   To prevail on any of these claims, Devan "must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense." *State v. Ames*, 2024 UT App 30, ¶ 17, 546 P.3d 356 (quotation simplified), *cert. denied*, 550 P.3d 993 (Utah 2024). Devan "must establish both prongs," and "if either is lacking, the claim fails and this court need not address the other." *State v. Forbush*, 2024 UT App 11, ¶ 26, 544 P.3d 1 (quotation simplified), *cert. denied*, 550 P.3d 995 (Utah 2024). To show deficient performance, Devan "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* ¶ 25 (quotation simplified). "The focus of this inquiry is reasonableness," which we judge "as of the time of counsel's conduct." *Id.* (quotation simplified). For the reasons set forth below, we conclude that Devan has not shown deficient performance with respect to the failure to request any of the proposed instructions.

A.   Lesser Included Offense

¶39   Devan was charged with aggravated assault, a third-degree felony. As noted, the State was required to prove that (1) Devan committed an act "with unlawful force or violence" that (2) "cause[d] bodily injury to" Steve or "create[d] a substantial risk of bodily injury to" Steve, and that (3) Devan used "force likely to produce death or serious bodily injury." Utah Code § 76-5-103(2)(a)(iii), (b)(iii). Devan now argues that he received ineffective assistance because Counsel did not request a lesser-included offense instruction on misdemeanor assault. We disagree.

¶40    An offense is a lesser included offense if "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* § 76-1-402(3)(a). A defendant is entitled to a lesser-included offense instruction if the defendant shows "(1) that the charged offense and the lesser included offense have overlapping statutory elements and (2) that the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *State v. Powell*, 2007 UT 9, ¶ 24, 154 P.3d 788 (quotation simplified); *see also* Utah Code § 76-1-402(3), (4).

¶41    In relevant part, a person commits class B misdemeanor assault by (1) committing an act with "unlawful force or violence," that (2) "cause[d] bodily injury to" or "create[d] a substantial risk of bodily injury to" another. Utah Code § 76-5-102(2)(b). The offense becomes a class A misdemeanor if the act "cause[d] substantial bodily injury." *Id.* § 76-5-102(3)(b)(i). We've previously held "that class A misdemeanor assault constitutes a lesser included offense of aggravated assault." *State v. Sanislo*, 2015 UT App 232, ¶ 14, 359 P.3d 1287. Devan therefore would have been entitled to this instruction on request.

¶42    But that does not end the inquiry. "[E]ven when there is a basis" for a lesser-included offense instruction, "counsel can reasonably decide not to request one." *State v. Hull*, 2017 UT App 233, ¶ 16, 414 P.3d 526. The decision of whether to request a lesser-included offense instruction "is within counsel's strategic discretion." *Id.* ¶ 17. And "counsel may have perfectly valid tactical reasons to forgo the instruction and to instead present an all or nothing defense that entails avoiding" a lesser-included offense instruction "in the hopes the jury will find the defendant totally innocent of *any* wrongdoing." *Id.* ¶ 16 (emphasis in original, quotation otherwise simplified). Any number of cases have recognized this as a valid strategic decision. *See, e.g., State v. Barnes*, 2023 UT App 148, ¶ 46, 542 P.3d 108 (holding that defense counsel did not perform deficiently for not requesting a lesser-

included offense instruction and instead pursuing an acquittal); *Hull*, 2017 UT App 233, ¶ 20 (holding that "it was objectively reasonable for trial counsel to forgo" a lesser-included offense instruction and to "instead present an 'all or nothing' defense"); *State v. Feldmiller*, 2013 UT App 275, ¶¶ 3–4, 316 P.3d 991 (per curiam) (holding that counsel did not perform deficiently for not requesting a lesser-included offense instruction and instead pursuing an all or nothing defense).

¶43 As a result, "when an appellant challenges trial counsel's failure to request a lesser included offense instruction as constitutionally ineffective, the appellant runs headlong into the strong presumption that, under the circumstances, the failure to request the lesser included offense instruction might be considered sound trial strategy." *State v. Powell*, 2020 UT App 63, ¶ 42, 463 P.3d 705 (quotation simplified). Devan has not overcome this strong presumption here.

¶44 The record in this case shows that Counsel gave the jury two paths by which it could acquit Devan of the charged offense entirely. First, as discussed, Counsel argued that Devan acted in self-defense. Self-defense is a complete defense to any kind of assault. *See* Utah Code § 76-2-402(2); *State v. Grant*, 2021 UT App 104, ¶ 31, 499 P.3d 176 ("Perfect self-defense is a complete defense to any crime and is available to one who reasonably believed that force was necessary to defend against unlawful force." (quotation simplified)). Second, Counsel also argued that Devan should be acquitted of aggravated assault because he did not use force likely to cause serious bodily injury. Counsel argued this point to the court in his motion for a directed verdict. And although that motion was denied, Counsel made the argument to the jury in closing argument. There, Counsel argued that Devan "did not use force likely to cause death or serious bodily injury." This was so, according to Counsel, because a person would not "normally . . . expect" such injuries to result from "a fistfight." From this, Counsel asked jurors to "find [Devan] not guilty."

¶45    Indeed, the directed verdict motion shows that Counsel was aware of the possibility of asking for an instruction on misdemeanor assault. As part of that motion, Counsel specifically asked the court to "amend" the charge "to a misdemeanor offense assault." Because Counsel then chose not to request that such an instruction be given to the jury, it appears that this decision was deliberate.

¶46    And there would have been a sound basis for that choice. Counsel could have reasonably believed that if the jury was given a lesser-included offense instruction on misdemeanor assault, the jury might accept that as something of a compromise option. By not requesting such an instruction, Counsel thus essentially presented jurors with an all or nothing defense (and, as indicated, one that gave jurors in this case two different paths by which they could completely acquit Devan of the charged offense). Consistent with the above cases, this was a reasonable strategic choice, and it was one that was within Counsel's discretion to make. We therefore reject this claim for lack of deficient performance.

B.    Definition of Aggressor

¶47    Devan next argues that he received ineffective assistance because Counsel did not request an instruction "clarifying the meaning of 'aggressor'" as it was used in the self-defense instruction. We disagree.

¶48    As noted, the jury was instructed that Devan was "not justified in using force if" he (1) "[i]nitially provoke[d] the use of force against another person with the intent to use force as an excuse to inflict bodily harm upon the assailant; or (2) [w]as the aggressor, unless" he withdrew "from the encounter and effectively communicate[d]" his "intent to do so" to Steve.

¶49    On appeal, Devan contends that the "jury could have been confused about the interplay between the provisions that define when self-defense is justified and the provisions that prohibit

aggressors from using self-defense." Because of this potential confusion, and the possibility that "the jury could have interpreted 'aggressor' narrowly to include only those who hit first," Devan thinks the term "aggressor" should have been further defined. Devan then points to our supreme court's decision in *State v. Gonzalez*, 2015 UT 10, 345 P.3d 1168, as support for a proposed additional instruction. There, the court explained that it had previously "defined 'aggressor' as one who willingly and knowingly initially provokes a combat or does acts of such a nature as would ordinarily lead to combat." *Id.* ¶ 28 (quotation simplified). In Devan's view, giving the jury this added definition would have mitigated any potential confusion and supported his claim that Steve was the aggressor even though Devan admittedly threw the first (and indeed only) punch(es).

¶50     But on the basis of the instructions that were given, Counsel was already able to argue that Steve was the aggressor. Jurors were instructed to "give all words their usual and ordinary meanings," and the term "aggressor" is commonly understood to mean "one that commits or practices aggression."[10] Even without any further definitional gloss from the court, Counsel argued that Steve was the aggressor because he sent Devan an angry text demanding his money back, and, once the two stepped outside the Bar, Steve blew smoke in Devan's face, said aggressive things, and inched toward Devan with his hand in his pocket. While the proposed *Gonzalez* language is more specific in that it focuses in on combat, it's not clear that the jury needed an instruction to understand that this was the type of aggression at issue.

¶51     Perhaps more importantly, we agree with the State that a reasonable attorney could have believed that the additional language might actually hurt Devan's case. After all, the proposed language would instruct jurors that a person could be regarded as

---

10. *Aggressor*, Merriam-Webster, https://www.merriam-webster.com/dictionary/aggressor [https://perma.cc/K7D4-HSC4].

the aggressor if the person "willingly and knowingly initially provokes a combat or does acts of such a nature as would ordinarily lead to combat." *Id.* (quotation simplified). As noted, Devan went to meet Steve at the Bar because, according to Steve's testimony at trial, Steve was "angry" and wanted his $50 back. But when Devan then approached Steve inside the Bar, which was a public place with lots of people, Devan didn't simply give Steve his money back there. Instead, he told Steve that he "want[ed] to talk . . . outside for a little bit." Once outside, the two exchanged words, after which Devan began punching Steve.

¶52 In these circumstances, Counsel could have reasonably worried that jurors might think that, by asking Steve to step outside the Bar with him, and given the clearly heightened state of tension between the two, Devan committed an act that might "ordinarily lead to combat." *Id.* (quotation simplified). In this sense, the proposed language could have given jurors additional reason to think that it was Devan, not Steve, who was the aggressor. And even if the risk wasn't pronounced, Counsel could have also reasonably believed that the added language didn't add much of value and simply wasn't worth even the small risk. For these reasons, we conclude that Counsel did not perform deficiently by not requesting the proposed instruction.

C.      Defense of Habitation

¶53 Finally, Devan argues that he received ineffective assistance because Counsel did not request an instruction on the defense of habitation. We again disagree.

¶54 "When a criminal defendant requests a jury instruction regarding a particular affirmative defense, the court is obligated to give the instruction if evidence has been presented . . . that provides any reasonable basis upon which a jury could conclude that the affirmative defense applies to the defendant." *State v. Low*, 2008 UT 58, ¶ 25, 192 P.3d 867. "However, a court need not instruct the jury on [a] requested affirmative defense where the

evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind as to whether the defendant acted in accordance with that affirmative defense." *State v. Burke*, 2011 UT App 168, ¶ 81, 256 P.3d 1102 (quotation simplified).

¶55 At the time of the events in question, the defense of habitation statute stated that force was justified by one person "against another when and to the extent that he reasonably believes that the force is necessary to prevent or terminate the other's unlawful entry into or attack upon his habitation." Utah Code § 76-2-405(1) (2020).[11] And "the use of force which is intended or likely to cause death or serious bodily injury" was justified "only if" one of the two following circumstances applied:

> (a) the entry is made or attempted in a violent and tumultuous manner, surreptitiously, or by stealth, and he reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person, dwelling, or being in the habitation and he reasonably believes that the force is necessary to prevent the assault or offer of personal violence; or

> (b) he reasonably believes that the entry is made or attempted for the purpose of committing a felony in the habitation and that the force is necessary to prevent the commission of the felony.

---

11. This statute was amended in 2024 to state that the defense applies if a person "reasonably believes" that force was necessary to prevent unlawful entry "into the actor's vehicle or unlawful entry or attack upon the actor's habitation or place of business or employment." Utah Code § 76-2-405(1) (2024). There's no allegation in this case that the Bar qualified as Devan's "place of business or employment." Regardless, in this instance, we think it best to cite to the version of the statute applicable at the time.

*Id.*

¶56 In his brief, Devan points to Steve's annoyance at having bought CBD gummies (as opposed to THC gummies). And Devan also points to the text Steve sent a few days later, where Steve said "You sold me some cbd bullshit man. I'm gonna come over later [and] give you these gummies back and you are gonna give me my money." From these things, Devan argues that he could have reasonably believed that he was justified in assaulting Steve at the Bar in order to "'prevent' Steve's future burglary of his home." In this sense, Devan is asserting that, on request from Counsel, he should have been allowed to make a preemptive defense of habitation argument—i.e., that because he allegedly thought Steve was going to attack him in his house in order to get his money back, he could reasonably think that it was necessary for him to go to the Bar to use force against Steve there instead. But we don't believe that Devan would have been entitled to such an instruction. This is so for two reasons.

¶57 First, Devan hasn't provided any authority that has allowed a preemptive defense of habitation argument like this one. To the seeming contrary, we note that prior Utah cases interpreting this defense have commonly turned on situations where the force in question was used at the place the person was purportedly defending. *See, e.g.*, *State v. Gardiner*, 814 P.2d 568, 569, 575–76 (Utah 1991) (holding that the defense of habitation did not apply to the defendant's use of force outside an airport building, which his father owned); *State v. McKenna*, 728 P.2d 984, 985–86 (Utah 1986) (holding that the defense of habitation did not apply to the defendant's use of force in his estranged wife's apartment, where he did not live); *State v. Mitcheson*, 560 P.2d 1120, 1122 (Utah 1977) (holding that the defense of habitation applied to the defendant's use of force in his sister's home, which he was occupying). And this makes sense. Both of the circumstances identified in the statute required (and still require) a showing that the use of force was "necessary" to stop or

terminate the unlawful "entry." *See* Utah Code 78-2-405. In this sense, the statute grounds the defense in the habitation itself. So in this case, even if Devan thought that Steve intended to come to his house at some future point to burglarize him, Devan could hardly claim that it was "necessary" for the defense of his home for him to travel to the Bar and preemptively attack Steve there.

¶58   Second, even if there could be some hypothetical situation in which this defense (under the terms of the statute then in effect) could have preemptively applied outside Devan's home, we're not convinced that there was a basis for applying it here on these facts. Contrary to the position Devan advances on appeal, we see nothing that was violent or suggestive of an impending burglary in Steve's text at all. True, Steve was clearly upset that Devan had sold him CBD gummies, as opposed to THC gummies, and Steve did say that he was going to come to Devan's house and get his money back. But in the same text (indeed, in the same sentence, even), Steve said that he was going to "give [Devan] these gummies back" in exchange for his money—i.e., that Steve intended to return the unwanted goods, which is altogether different than committing a burglary. Steve never said anything about using violence as part of this return, and Devan has not claimed that there was any past history of violence between the two from which Devan could reasonably think that there was an implied threat of violence. Moreover, if Steve actually intended to go to Devan's house to rob him, it would be a curious thing for Steve to have sent Devan a text warning him in advance.

¶59   Again, "a court need not instruct the jury on the requested affirmative defense where the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind as to whether the defendant acted in accordance with that affirmative defense." *Burke*, 2011 UT App 168, ¶ 81 (quotation simplified). Simply put, Devan is arguing that he was entitled to a defense of habitation instruction to prevent a burglary, even though he used force at a place that was not his habitation and there are no facts

suggesting that his victim intended to burglarize him. On the state of the law and on this record, we therefore see no basis for concluding that Devan was entitled to the proposed instruction. As a result, we conclude that Counsel did not perform deficiently by not requesting it.

## CONCLUSION

¶60    The district court did not abuse its discretion by denying the proposed Actual-Danger Instruction, and Counsel did not provide ineffective assistance by failing to request additional jury instructions on misdemeanor assault, the definition of aggressor, or the defense of habitation. We accordingly affirm Devan's conviction.

––––––––––